UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEHDI ABDOLLAHZADEH,<br><br>    Plaintiff,<br><br>    v.<br><br>MANDARICH LAW GROUP, LLP,<br><br>    Defendant. | No. 16 CV 8682<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mehdi Abdollahzadeh brings this action against the Mandarich Law Group for mailing a collection letter that did not inform him that the expiration of the statute of limitations prevented MLG from suing to collect the debt and for filing a state-court action against him on a time-barred debt, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* The parties filed cross-motions for summary judgment. *See* [59], [64]. For the following reasons, plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted.

**I.    Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no

genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *Roh v. Starbucks Corp.*, 881 F.3d 969, 973 (7th Cir. 2018). On cross-motions for summary judgment, a court must draw inferences "in favor of the party against whom the motion under consideration [was] made." *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005) (citation omitted). Cross-motions must be evaluated together; the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute. *Davis v. Time Warner Cable of Southeastern Wis., L.P.*, 651 F.3d 664, 671 (7th Cir. 2011).

## II.  Background

Abdollahzadeh opened a credit account in 1998 and he incurred charges for personal, family, and household purposes. [69] ¶ 7.[1] Almost twelve years later, Abdollahzadeh defaulted on that debt. *Id.* ¶ 8. Several years after the charge-off date, a debt-buying entity named CACH, LLC purchased Abdollahzadeh's debt from the seller pursuant to a Loan Sale Agreement. *Id.* ¶¶ 10, 13; [74-1] ¶ 7. Since CACH's parent corporation had retained MLG for debt collection, [74-1] ¶ 13, CACH

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are largely taken from MLG's responses to Abdollahzadeh's Local Rule 56.1(a) statements, [69], and Abdollahzadeh's responses to MLG's Local Rule 56.1(a) statements, [74-1], where both the asserted fact and the opposing party's response are set forth in one document. When the parties raised arguments in their statements, included additional facts in their responses or replies, failed to support their statements by admissible evidence, or failed to cite to supporting material in the record, I disregarded those portions of those statements, responses, or replies.

placed the debt with MLG for collection.[2] [69] ¶ 17. At the time of placement, CACH provided MLG a copy of the Bill of Sale, the seller's electronic transfer file for the account called "Schedule 1," and CACH's document called the Account Information Report. [74-1] ¶¶ 9–10. Schedule 1 included information about the account, such as the account holder's name, the account number, the open date, the balance, the date and amount of the last payment, the interest rate, the charge-off date, and the balance at the charge-off date. *Id.* ¶ 11. The Account Information Report, which CACH created using its proprietary software, contained similar information as Schedule 1 about the account, including the date of last payment, but it also had information such as notes and comments about the account and any related litigation. *Id.* ¶ 9; [58-1] ¶ 12.

On December 3, 2015, MLG mailed a letter to Abdollahzadeh stating that he owed CACH a balance due of $16,709.62 in connection with the debt. [69] ¶ 23; [64-2] at 16. The letter also explained that MLG was "acting solely as a debt collector," and included two additional cautionary messages: "this communication is from a debt collector," and "this is a demand for payment of your outstanding obligation."[3] [69] ¶ 23. The letter did not warn Abdollahzadeh that the debt was too old for MLG to sue upon or that making a payment toward the alleged debt after the statute of limitations had passed would restart the statute of limitations clock on the alleged

---

[2] The retainer agreement provided that CACH did not warrant the completeness or accuracy of the account data that it provided to MLG. [69] ¶ 39.

[3] MLG is a creditor's rights law firm, [74-1] ¶ 3; its website states: "This communication is from a debt collector." [69] ¶ 4.

3

debt. *Id.* ¶ 25. MLG did not receive a response from Abdollahzadeh regarding the December 3, 2015 letter. [77-1] ¶ 16.

A few months after MLG sent the letter, the firm filed a complaint for breach of unwritten contract on behalf of CACH in the Circuit Court of Cook County, alleging that Abdollahzadeh owed $16,709.62 on the account. [74-1] ¶ 34. Abdollahzadeh moved to dismiss the state-court action because MLG filed the complaint after the expiration of the five-year statute of limitations. [69] ¶ 29. MLG opposed the motion, arguing that the accrual date was July 8, 2011, when Abdollahzadeh's payment of the alleged debt was returned for insufficient funds, and therefore, the complaint was timely. *Id.* ¶¶ 31–32. Ultimately, the state court found that MLG filed the complaint more than five years after Abdollahzadeh's last payment, so the state court dismissed the complaint with prejudice on September 6, 2016, *id.* ¶ 30; [74-1] ¶ 50.

During the pendency of the state-court action, MLG never alleged that it made a mistake in connection with filing that complaint. [69] ¶ 33. MLG acknowledges that when it filed the state-court complaint, it knew that the charge-off date was March 31, 2011, the last payment date was June 30, 2011, and that the Account Information Report and Schedule 1 listed $16,709.62 as both the charge-off balance and the current balance. But, MLG did not know the manner in which the last payment was presented, nor did it know the banking institution from which it originated. *Id.* ¶ 21. Only after Abdollahzadeh moved to dismiss the state-court action, did MLG seek clarification from CACH about the date of the last payment,

4

and only at that time did CACH inform MLG that CACH had conferred with the seller and had learned that Abdollahzadeh's June 30, 2011 payment never cleared, which meant the last payment without such a reversal was tendered on August 3, 2010. [77-1] ¶¶ 25–26.

This mistake conflicted with CACH's and MLG's policies prohibiting the collection of a debt for which the statute of limitations had expired.[4] *Id.* ¶ 11; [58-1] ¶ 21. Specifically, if the statute of limitations for any account that was placed with MLG expired, it was MLG's policy to immediately cancel the account and to return it to the creditor, so long as that account was not in active litigation. [77-1] ¶ 10. As such, before it filed the state-court complaint, MLG had analyzed Abdollahzadeh's account to determine whether a suit would be outside of the statute of limitations. *Id.* ¶ 17. MLG had considered the last payment date provided in Schedule 1, as well as in the Account Information Report, which had the benefit of CACH's software that scrubbed all open and active accounts nightly to identify accounts in which the statute of limitations had expired. *Id.* ¶¶ 4–5; [58-1] ¶ 22. Additionally, CACH had sent MLG an affidavit certifying that the information contained in the draft complaint was accurate and supported by CACH's business records. [64-4] at 100:1–11. It was MLG's policy that before filing suit, its attorneys must review the relevant affidavit from a CACH custodian of records to ensure that the information

---

[4] MLG was required to comply with CACH's policies and standard operating procedures. [77-1] ¶¶ 1–2. CACH's and MLG's policy used the date the last payment cleared to determine the statute of limitations. [64-4] at 69:1–70:5. But, MLG's written policies did not define "date of last payment," nor did they identify how an attorney should proceed if a payment was attempted on a debt, but had not cleared. [69] ¶ 40.

in CACH's business records matched the information contained in the proposed complaint. *Id.*

These circumstances led MLG to attempt to collect an out-of-statute debt from Abdollahzadeh. As a result of MLG's actions, Abdollahzadeh says that he experienced emotional distress, including panic, fear, anxiety, and sleeplessness. [64-2] at 3, ¶¶ 10, 13–14. This was due in part to the fact that MLG's letter made Abdollahzadeh believe that the firm could file a lawsuit against him to collect the debt. *Id.* at 3, ¶¶ 10, 15. Abdollahzadeh did not seek any medical treatment for these symptoms, though. [77-1] ¶ 30. Abdollahzadeh also says that he experienced financial harm from MLG's actions because he had to pay attorneys' fees and costs in the state-court action. [64-2] at 3, ¶¶ 11–12. Accordingly, Abdollahzadeh brought this FDCPA claim against the firm.

MLG moves for summary judgment, arguing that it is entitled to the bona fide error defense, that 15 U.S.C. § 1692f is not implicated, and that Abdollahzadeh is not entitled to emotional distress or punitive damages. *See* [59], [60]. Abdollahzadeh moves for summary judgment, arguing that MLG violated § 1692e and § 1692f, that MLG is not entitled the bona fide error defense, and that he is entitled to emotional distress damages. *See* [64], [64-1].

**III. Analysis**

The FDCPA regulates when and where a debt collector may communicate with a debtor, 15 U.S.C. § 1692c; it prohibits the use of harassing, oppressive, or abusive measures to collect a debt, *id.* § 1692d; and it bans the use of false, deceptive, misleading, unfair, or unconscionable means of collecting a debt, *id.*

6

§§ 1692e, 1692f. *See Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). Two threshold criteria must be met to state an FDCPA claim: (1) the defendant must qualify as a "debt collector," and (2) the communication by the debt collector must have been made "in connection with the collection of any debt." *Id.* (citing 15 U.S.C. §§ 1692a(6), 1692c(a)–(b), 1692e, 1692g). Even assuming that MLG is a debt collector and that both MLG's letter and its state-court action constitute communications under the FDCPA, it does not follow that Abdollahzadeh may prevail on his FDCPA claims here. MLG's affirmative defense entitles the firm to judgment as a matter of law.

Section 1692k includes an affirmative defense to civil liability—a debt collector will not be held liable for an FDCPA violation if it shows, by a preponderance of the evidence, that its violation was unintentional and the result of a bona fide error, even though the debt collector had ample procedures that were reasonably equipped to avoid such errors. 15 U.S.C. § 1692k(c). This "bona fide error" defense protects a debt collector's "clerical or factual mistakes," not the debt collector's errors of law in interpreting the FDCPA. *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 899 (7th Cir. 2015) (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010)). A debt collector need not show that its actions were unintentional, only that its FDCPA violation was unintentional. *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005).

MLG argues it is entitled to the bona fide error defense because the undisputed facts establish the requisite elements by a preponderance of the

evidence. Any violation of the FDCPA that MLG committed was unintentional, MLG insists, because it was not aware that Abdollahzadeh's account was outside the statute of limitations when it mailed him the December 3, 2015 letter or when it filed the state-court complaint. Due to the account information that MLG received from CACH, MLG believed that Abdollahzadeh's account *was* within the statute of limitations. The error occurred despite the number of procedures that MLG had in place to prevent the attempt to collect an out-of-statute debt, namely a policy to cancel and return any account that was not in active litigation once its statute of limitations expired, a policy to check dates on each account and to review the certification of accurate account information from a CACH custodian of records before filing suit, and reliance on the nightly scrubbing of accounts by CACH's software to identify out-of-statute debts. Accordingly, MLG argues that it is entitled to the benefit of the bona fide error defense.

Abdollahzadeh disputes that MLG can prevail on this defense. First, Abdollahzadeh argues that before the firm filed the state-court complaint, it "had all the information it needed" to know that the June 30, 2011 payment had not cleared because according to the Account Information Report and Schedule 1, the charge-off date was March 31, 2011, and the charge-off amount was $16,709.62, which was the same amount as the current balance that MLG sought to collect in the state-court action. [74] at 10. From that information, Abdollahzadeh argues, it was evident that no payments had cleared between the charge-off date and the

8

filing of the state-court action. Consequently, June 30, 2011 could not have been the date of the last payment.

Second, Abdollahzadeh argues that it was not reasonable for MLG to rely on its procedures because they were insufficient to guard against an attempt to collect an out-of-statute debt. Abdollahzadeh makes the following observations and criticisms: MLG's written policies did not explain how to calculate the Illinois statute of limitations; its attorney involved in the state-court action did not have the qualifications or knowledge to understand the relevant credit-card statements, specifically what the payment code of "PMT-VDR XMTL" meant; the firm did not receive training from CACH or the original creditor on how they calculated the date of last payment; the Loan Sale Agreement communicated that payments may have been made and returned, but not reflected in the information provided on the alleged debt; and there was no provision in the retainer agreement guaranteeing that CACH will provide accurate information to MLG.

Third, Abdollahzadeh takes issue with MLG's decision to continue to litigate the state-court action after it learned that the account was out-of-statute; Abdollahzadeh asserts that MLG should have cancelled the account per its policy. Due to this decision, Abdollahzadeh argues that MLG has no bona fide error defense because an implicit requirement of the defense is that MLG followed its procedures. [74] at 13 (citing *Johnson v. J.V.D.B. & Assocs.*, No. 12 C 7223, slip op. at 5 (N.D. Ill. Sep. 26, 2014)). *Johnson* does not support Abdollahzadeh's proposition. In that case, the defendant's policies and procedures were inaccurate and in a passing one-

sentence remark, the court also noted that the defendant did not follow one such policy "rigorously." *Johnson*, No. 12 C 7223, slip op. at 5.

I disagree with Abdollahzadeh's arguments about the bona fide error defense. There is no evidence to support Abdollahzadeh's assertion that MLG must have recognized that there had been a bounced payment merely because the charge-off amount was identical to the balance after the June 30, 2011 report of a payment. Different inferences could be drawn from the unchanged balance after June 30, 2011, and the firm posits a few. [76] at 7. But one reasonable inference, that would not be speculative or conjecture, would be that the June 30, 2011 payment did not clear. Abdollahzadeh is entitled to favorable inferences at this stage. Nevertheless, there is no evidence that the firm intentionally overlooked the discrepancy between the date and the amount of the last payment, and the balance due. There is also no dispute that the firm received a report of a timely last payment date, so even if the firm should have noticed the discrepancy, "the FDCPA does not require collectors to independently verify the validity of the debt to qualify for the 'bona fide error' defense." *Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004). The representation from CACH that there was a payment in June 2011 did not have to be verified for the firm to rely on the defense. And before filing suit, the firm received an affidavit from the client verifying, albeit incorrectly, the date of last payment.

The absence of a written policy calculating the Illinois statute of limitations, does not affect the applicability of the bona fide error defense here. The undisputed record shows that MLG's unwritten policies fill in the gaps Abdollahzadeh identified

10

in MLG's written policies. Both MLG and CACH have an unwritten policy to use the date of the last payment that cleared to calculate an account's statute of limitations. To find that date, MLG's and CACH's unwritten policy was to use the corresponding date listed in the Account Information Report and Schedule 1. In practice, CACH's software generated the Account Information Report and then scrubbed that data nightly to flag any accounts with expired statute of limitations. Abdollahzadeh does not suggest that there were any flaws with that software, generally, or with the software's ability to calculate the Illinois statute of limitations, specifically. MLG's policy and procedure to rely on the data from the Account Information Report and Schedule 1 to identify the date of the last payment that cleared, and then to verify that the statute of limitations had not expired is reasonable. There is no dispute that MLG followed those steps here, which led the firm to conclude that the last payment in Abdollahzadeh's account had cleared and the account was eligible for suit.

Similarly, the inability of MLG's attorney to define a code contained in the credit-card statement is irrelevant to the bona fide error defense—MLG did not rely on that document, it relied on the account information tendered by CACH. To the extent Abdollahzadeh asserts that MLG should have received training from CACH and the original creditor regarding the interpretation of those statements before MLG took any action to collect the debt, he exceeds the requirements of the bona fide error defense. That defense only requires debt collectors to take reasonable

precautions to avoid errors, not every conceivable precaution. *See Kort*, 394 F.3d at 539 (citing *Hyman*, 362 F.3d at 968).

With respect to the Loan Sale Agreement, it was an agreement between CACH and the seller, which MLG never possessed. *See* [69] ¶13. Knowledge that the agreement included a section titled "Discrepancies in Current Balance," which explained that the current balance for a loan may not be accurate,[5] *see* [69] ¶ 14, is not imputed to MLG. *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004). Contrary to Abdollahzadeh's assertions, MLG did not rely on this document in taking its debt-collection actions; MLG simply attached the Bill of Sale as an exhibit to its state-court action, and the body of the Bill of Sale referenced the Loan Sale Agreement. *See* [64-2] at 53; [64-4] at 80:19–81:14. In any event, this section of the agreement is not relevant here because there are no allegations that the balance was misstated; rather, Abdollahzadeh acknowledges that the balance was accurate. Also, the absence of a warranty in the retainer agreement from CACH does not affect the reasonableness of MLG's reliance on the data CACH gave to MLG because CACH was not the originator of that account information—CACH merely provided MLG the information the original creditor had tendered to CACH.

Third and finally, the policies and procedures that Abdollahzadeh claims MLG violated had no bearing on the circumstances involved in the state-court action. Neither MLG nor CACH had a policy—written or an unwritten—that

---

[5] For example, the dollar amount listed as the current balance might not reflect credits for payments made by the obligor and not posted before the cut-off date, or the current balance could reflect a dollar amount that was already credited to the balance but subsequently returned due to insufficient funds. *See* [69] ¶ 14.

12

governed the course of action MLG should have taken if it mistakenly pursued a collection action on an out-of-statute debt. As such, MLG could not have violated any of its policies and procedures. Moreover, the bona fide error defense does not depend on such compliance by MLG.

It is likely that MLG would have discovered the error if it had independently reviewed the account's information, but the bona fide error defense does not require that level of verification from debt collectors. That the firm had reasonable precautions in place to avoid attempting to collect out-of-statute debts is sufficient. It had a policy not to collect time-barred debts, another policy to check dates on the accounts and to review CACH's certification to ensure the debt was not out-of-statute before filing suit, and it benefitted from CACH's software that scrubbed files for timeliness. These policies did not catch the underlying error in the data here—that the last payment date did not reflect a cleared payment—but, these imperfect precautions were reasonable as a matter of law, because they were intended to avoid untimely collection efforts. The bona fide error defense does not demand perfection.

Even if MLG establishes the requisite elements, Abdollahzadeh maintains that MLG is not entitled to the bona fide error defense because MLG's mistake was one of law, not of fact. Based on MLG's understanding of Illinois law, MLG argued that its complaint was timely because the bounced payment reset the statute of limitations. The state court rejected MLG's argument and dismissed its complaint. As a result, Abdollahzadeh concludes that MLG misunderstood Illinois law. In

response to MLG's new argument in this action that it would not have attempted to collect the debt had it been aware of its mistake, Abdollahzadeh argues that "[MLG] cannot have it both ways." [74] at 7. Specifically, Abdollahzadeh urges this court to reject MLG's attempt to reframe its mistaken legal interpretation as a mistake of fact.

MLG raises an important temporal distinction in response to Abdollahzadeh's points. There is no evidence in the record to suggest that MLG believed it could or intended to collect an out-of-statute debt when it sent the collection letter or when it filed the state-court complaint. To the contrary, the record shows that MLG would not have attempted to collect the debt had it known the last payment identified in the original creditor's and CACH's records reflected a bounced payment. The decision MLG made *at a later date* to defend against Abdollahzadeh's motion to dismiss was based on MLG's incorrect interpretation of Illinois law, but that mistake has no retroactive effect on MLG's original good faith belief and related actions. The mistake MLG made here was relying on records that CACH received from the original creditor, which improperly used the date Abdollahzadeh made a payment that eventually bounced as the last payment date. That is precisely the type of clerical or factual mistake that the bona fide error defense is designed to protect.

The bona fide error defense applies here and MLG is exempt from FDCPA liability. MLG's motion for summary judgment is granted as to that issue.[6]

---

[6] I do not reach MLG's arguments about 15 U.S.C. § 1692f or damages.

Consequently, Abdollahzadeh's motion for summary judgment is denied, and judgment is entered in MLG's favor on Abdollahzadeh's FDCPA claims. As there are no remaining federal claims in this action, I decline to exercise supplemental jurisdiction over Abdollahzadeh's state-law claims. *See* 28 U.S.C. § 1367. Those claims are dismissed without prejudice.

## IV. Conclusion

Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: March 26, 2018